UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA K. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16 CV 685 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Plaintiff Lisa K. Miller brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Miller had the medically determinable impairments of obesity, sinusitis, and ear infection, but these impairments were not severe through her date last insured of September 30, 2008.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Miller protectively filed her application for DIB on August 2, 2012, claiming that she

became unable to work on September 30, 2008,[1] because of fibromyalgia and high blood pressure. (Tr. 132-38, 166.) Her claims were denied initially. (Tr. 79-83.) Following an administrative hearing, Miller's claims were denied in a written opinion by an ALJ, dated April 24, 2014. (Tr. 10-16.) Miller then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on August 12, 2015. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In her *pro se* brief, Miller argues that the ALJ "refused to review many updated medical records and explanations concerning" her diagnosis with fibromyalgia in June 2012. (Doc. 26 at p. 3.) After liberally construing Miller's brief, the undersigned finds no error, and will affirm the decision of the Commissioner.

## II. The ALJ's Determination

The ALJ first found that Miller last met the insured status requirements of the Social Security Act on September 30, 2008. (Tr. 12.) She found that Miller did not engage in substantial gainful activity during the period from her alleged onset date of September 30, 2008, through her date last insured of September 30, 2008. *Id.*

In addition, the ALJ concluded that Miller had the following medically determinable impairments: obesity, sinusitis, and ear infection. *Id.* The ALJ found that, through the date last insured, Miller did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. *Id.* The ALJ therefore concluded that Miller was not under a disability, as defined in the Social

---

[1] Miller originally alleged an onset date of December 31, 2007, but later amended her onset date to September 30, 2008. (Tr. 132, 158.)

Security Act, from September 30, 2008, the alleged onset date, through September 30, 2008, the date last insured. (Tr. 15.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 2, 2012, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through September 30, 2008, the last date insured.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

> 4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
>
> 5. Any corroboration by third parties of the plaintiff's impairments.
>
> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment

or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.  Discussion

The ALJ terminated the sequential analysis at Step 2 upon finding that Miller's medically determinable impairments were not severe.   A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months.   20 C.F.R. §§ 404.1520(a)(4), (c) and 416.920(a)(4), (c); 20 C.F.R. §§ 404.1509, 416.909.   "The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.   A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011) (internal citations and quotation marks omitted) (brackets in *Martise*).   The claimant has

the burden of showing a severe impairment, but the burden at this stage of the analysis "is not great." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001). While establishing "severity" may not be an onerous requirement for a claimant to meet, "it is also not a toothless standard[.]" *Kirby,* 500 F.3d at 708.

Because Miller's last date insured is September 30, 2008, Miller has the burden to show that she had a disabling impairment before her insured status expired. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date she was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007). "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.*

Applying these standards, the record contains substantial evidence that Miller's impairments were not severe by September 30, 2008. Miller's representative testified at the hearing that Miller was unable to work in 2008 due to chronic pain related to fibromyalgia. (Tr. 35.) He stated that medical records from 2012 show that Miller's fibromyalgia symptoms began 48 months later. *Id.* The ALJ noted that Miller was trying to relate her fibromyalgia back to 2008 through a 2012 record, and found this argument "to be unconvincing because this appears to rely on the claimant's self-report" rather than an established diagnosis of fibromyalgia. (Tr. 13.)

The medical evidence to which the ALJ refers is a treatment note from Elizabeth Winters, APRN, dated July 16, 2012. (Tr. 245-47.) Miller reported to establish care with Ms. Winters and complained of fibromyalgia, hypertension, and hyperlipidemia. (Tr. 245.) She described

her fibromyalgia symptoms as widespread pain, diffuse tenderness, generalized fatigue, arthralgias, joint stiffness, morning stiffness, sleep disturbance, early awakening, difficulty falling asleep, restless legs, headaches, depression, and exercise intolerance. *Id.* Miller rated her current pain level as a five out of ten, with a maximum pain level of a ten. *Id.* She stated that the pain was dull and aching, and was located in her neck, left upper extremity, left lower extremity, right upper extremity, and right lower extremity. *Id.* Miller reported that the "onset was 48 month(s) ago." *Id.* Upon physical exam, Miller was cooperative and well-appearing, not in acute distress, was obese, and had no edema. (Tr. 246.) Ms. Winters diagnosed Miller with hypertension, hyperlipidemia, and fibromyalgia. (Tr. 247.) She started Miller on Cymbalta.[2] *Id.*

The ALJ's finding that Ms. Winters' treatment notes did not establish a diagnosis of fibromyalgia beginning in 2008 is supported by the record. The ALJ accurately pointed out that Ms. Winters' reference to an onset of symptoms 48 months prior was based on Miller's self-report rather than an established diagnosis.

The ALJ next stated that, under Social Security Ruling 12-2p, the evidence of record is insufficient to support that Miller's fibromyalgia is a medically determinable impairment. (Tr. 13.) Social Security Ruling 12-2P provides guidance on how to evaluate fibromyalgia. SSR 12-2P (2012). A claimant has a medically determinable impairment of fibromyalgia if (1) a physician diagnoses fibromyalgia and (2) provides evidence described in Section II.A or II.B of SSR 12-2P. *Id.* at *2. Section II.A states that a person has a medically determinable impairment of fibromyalgia if she has (1) a history of widespread pain in all quadrants of the body (left, right, above, and below); (2) at least 11 positive tender points on physical examination; and (3) evidence

---

[2]Cymbalta is indicated for the treatment of depression, anxiety, and nerve pain. *See* WebMD, http://www.webmd.com/drugs (last visited February 23, 2018).

that other disorders that could cause the symptoms or signs were excluded such as laboratory testing and imaging.  *Id.* at *2-3.  Section II.B requires that a person have (1) a history of widespread pain (like Section II.A); (2) repeated manifestations of six or more fibromyalgia symptoms, especially manifestations of fatigue, cognitive and memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations were excluded.  *Id.* at *3.  A physician's diagnosis of fibromyalgia cannot be inconsistent with the other evidence in the claimant's record. *Id.* at 2.

The ALJ stated that, even assuming the record supports a history of widespread pain, the record contains no evidence of 11 out of 18 positive tender points.  (Tr. 13.)  She further found that there was no evidence of repeated manifestations of six or more fibromyalgia symptoms or evidence that other disorders that could cause these symptoms were excluded.  (Tr. 13-14.)

The ALJ's finding is supported by the record.  As noted by the ALJ, even treatment notes from well after Miller's date last insured reveal unremarkable physical examinations.  (Tr. 14-15.)  On March 2, 2010, Miller presented to Chad R. Fowler, M.D., with complaints of constant worrying with muscle and joint pain.  (Tr. 258.)  Upon physical examination, Dr. Fowler noted no abnormalities.  (Tr. 259.)  He diagnosed Miller with "pain in the muscles" and "pain in joints," and generalized anxiety disorder ("GAD"), and started her on Cymbalta.  (Tr. 260.)  On April 2, 2010, Miller presented for follow-up regarding anxiety.  (Tr. 266.)  Dr. Fowler noted that Miller was overall "much improved" on Cymbalta, and her diffuse pains were resolving.  (Tr. 266.)  No abnormalities were noted on physical exam.  *Id.*  When Miller saw Ms. Winter more than two years later in July 2012, her physical examination remained unremarkable.  (Tr. 246.)

Miller argues in her Reply that Dr. Fowler diagnosed her with fibromyalgia on March 2, 2010, and notes that she was prescribed Cymbalta for fibromyalgia at that time. (Doc. 29.) As previously discussed, however, Dr. Fowler did not diagnose Miller with fibromyalgia but instead merely assessed "pain in the muscles" and "pain in joints." (Tr. 259.) In fact, Dr. Fowler noted that Miller's Vitamin D deficiency "may be the cause of muscle/joint pains." (Tr. 260.) He prescribed Cymbalta for both the muscle and joint pain and the anxiety, and recommended that Miller spend 10-15 minutes in the sun a few times per week. *Id.* Significantly, Dr. Fowler noted no abnormalities on examination.

In sum, the ALJ properly considered Miller's medically determinable impairments of obesity, sinusitis, and ear infection, but found they were not severe during the relevant period. Miller does not dispute the ALJ's severity finding with regard to these impairments. Before the expiration of the date last insured, there is no medical evidence in the record to support a diagnosis of fibromyalgia. As stated earlier, evidence from outside the period cannot serve as the only support for the disability claim. *Cox*, 471 F.3d at 907. Thus, substantial evidence supports the ALJ's determination in this case.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of March, 2018.